UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                              )
LIBERTY MUTUAL INSURANCE COMPANY,             )
                                              )        C.A. No. 1:04-CV-10648-DPW
        Plaintiff,                            )        C.A. No. 1:04-CV-10649-DPW
                                              )        C.A. No. 1:04-CV-10668-DPW
v.                                            )        C.A. No. 1:04-CV-10669-DPW
                                              )        C.A. No. 1:04-CV-10676-DPW
THE BLACK & DECKER CORPORATION,               )
BLACK & DECKER, INC., BLACK & DECKER          )
(U.S.) INC., EMHART CORPORATION, and          )
EMHART INDUSTRIES, INC.,                      )
                                              )
        Defendants.                           )
_____)

**SUPPLEMENTAL MEMORANDUM REGARDING
ABARCA BOSTIK, ALWELL ASBESTOS, MARITIME ASBESTOS,
MARITIME HEARING LOSS AND PENNSYLVANIA BENZENE CLAIMS**

This supplemental memorandum addresses recent developments pertinent to the Black &
Decker summary judgment motion regarding the five long-term exposure ("LTE") claims as to
which Liberty Mutual Insurance Company ("Liberty Mutual") has not asserted as a defense the
existence of purported cost-sharing agreements. These claims are the Abarca Bostik Claim
(Civil Action 1:04-10648-DPW), the Alwell Asbestos Claim (Civil Action No. 1:04-10649-
DPW), the Maritime Asbestos Claim (Civil Action No. 1:04-10668-DPW), the Maritime Hearing
Loss Claim (Civil Action No. 1:04-10669-DPW) and the Pennsylvania Benzene Claim (Civil
Action No. 10676-DPW). The last substantive submission regarding these claims was a Black &
Decker memorandum dated June 11, 1998. This submission and Black & Decker's prior
submissions are in Volume 11 of the Compendium that Black & Decker filed in Civil Action No.
98-10804-DPW ("1996 Action") on September 27, 2002

Following the June 1998 memorandum, there has been one important development regarding these five claims.  In February, 2002, Liberty Mutual paid essentially all of the principal balance owed on these five claims.  The payments by Liberty Mutual do not cure Liberty Mutual's breach of contract, and Black & Decker is entitled to interest for the period that these balances were unpaid.

## BACKGROUND

**A.    Procedural History**

By February 1996 at the latest, Black & Decker had given notice to Liberty Mutual of the Abarca Bostik Claim, the Maritime Asbestos Claim, the Maritime Hearing Loss Claim and the Pennsylvania Benzene Claim, and had requested that Liberty Mutual provide a defense for Black & Decker with respect to these LTE claims.  However, Liberty Mutual did not respond to notice of these claims either by agreeing or by refusing to provide a defense to Black & Decker with respect to those claims.  Therefore, after Liberty Mutual filed its Complaint in the 1996 Action, Black & Decker brought a counterclaim against Liberty Mutual in April 1996, alleging that Liberty Mutual had failed to provide Black & Decker with a defense with respect to these four claims.

In December 1996, Black & Decker notified Liberty Mutual of an additional LTE claim, the Alwell Asbestos Claim, shortly after Black & Decker learned of the claim.  After receiving no response to this notice, or to a subsequent notice in February 1997, Black & Decker moved to supplement its counterclaim in the 1996 Action to include the Alwell Asbestos Claim as a LTE claim for which Liberty Mutual had failed to provide a defense.  The Court allowed Black & Decker's motion on August 4, 1997.

It was not until summary judgment papers were filed in February and March of 1998 that Liberty Mutual acknowledged that it had a duty to provide a defense to Black & Decker with respect to these five claims.[1]  Copies of invoices documenting legal fees and expenses relating to these claims had been made available to Liberty Mutual in January 1998, and copies of some of these invoices were included in the appendix to Black & Decker's summary judgment motion. After further discussions,[2] counsel for the parties agreed in July 1999 to a process pursuant to which Black & Decker would provide Liberty Mutual with "complete defense cost invoices" for the Five Long Term Exposure Claims.  Accordingly, Black & Decker forwarded indexed binders of invoices for most of the defense costs for these claims to Liberty Mutual between October 1999 and February 2000.

**B.    The February 2002 Payments**

As of January 30, 2002, Liberty Mutual had not paid any of the defense costs for the five LTE claims at issue here, despite its acknowledgment and admission, in filings in the Prior Action and elsewhere, that it was obligated to pay such costs.  On that date, Black & Decker moved to supplement its counterclaim in the 1996 Action to add allegations concerning Liberty Mutual's failure to pay these costs.  The Liberty Mutual response to this motion was filed on February 13, 2002.  In its response, Liberty Mutual alleged that it had paid the defense costs in connection with the five LTE claims  Those payments were made by checks dated February 12,

---

[1]    In the initial scheduling orders in the 1996 Action, proceedings concerning the Maritime Asbestos Claim had been stayed by agreement.  The Maritime Asbestos Cla im were therefore not addressed in the parties' summary judgment motions.  On September 11, 2002, the Court allowed Black & Decker's motion to modify the scheduling order in the 1996 Action to permit the Maritime Asbestos Claim to proceed.  This claim is now ripe for summary judgment, as discussed below.

[2]    The supplemental production of invoices was in accordance with the October 30, 1998 hearing in the 1996 Action, at which it was agreed that Black & Decker would provide up-to-date invoices regarding these claims to Liberty Mutual.

2002 that Black & Decker did not receive until after Liberty Mutual filed its oppositions to the motions.

The payments made by Liberty Mutual for these five claims were in the approximate amount of the then-outstanding principal amount owed with respect to each claim. However, the payments did not include interest, although the invoices being belatedly paid were dated as early as May 1994. The principal balance due on each claim as of February 12, 2002, and the interest due on that balance as of that date, are shown below:

| Claim | Principal Due as of 2/12/02 | Interest Accrued[3] as of 2/12/02 | Payment on 2/12/02 | Total Unpaid as of 2/12/02 |
|---|---|---|---|---|
| Abarca Bostik | $   361,640.97 | $   180,915.40 | $   (361,451.91) | $ 181,104.46 |
| Alwell Asbestos | $   163,813.07 | $     61,259.60 | $   (161,759.57) | $   63,313.10 |
| Maritime Asbestos | $   997,235.67 | $   713,207.02 | $   (993,558.26) | $ 761,844.43 |
| Maritime Hearing Loss | $     75,756.25 | $     54,325.47 | $     (75,756.25) | $   54,325.47 |
| Pennsylvania Benzene | $   198,727.94 | $   104,556.06 | $   (198,727.94) | $ 104,556.06 |
| **TOTAL:** | **$ 1,797,173.90** | **$ 1,114,263.56** | **$ (1,791,253.93)** | **$ 1,120,183.53** |

As this chart makes clear, Liberty Mutual still owes Black & Decker over $1 million in interest in connection with Liberty Mutual's belated payment of Black & Decker's defense costs for these five claims.

## ARGUMENT

### A.    These Claims Are Ripe For Summary Judgment As To Liberty Mutual's Breach Of Contract.

Liberty Mutual acted in breach of its obligations under the various policies issued to Black & Decker and its predecessors by failing to provide a defense to these five claims. Liberty

---

[3]    Interest was calculated on each invoice at the Massachusetts statutory rate of 12% for the period beginning thirty days after the date of the invoice and ending February 12, 2002.

Mutual failed to respond to the notice given by Black & Decker with respect to each of these claims, forcing Black & Decker to include these claims in its counterclaim in the 1996 Action. Even after Black & Decker filed its counterclaim, Liberty Mutual waited nearly two more years before acknowledging its obligation to provide a defense to these claims. Liberty Mutual also failed to make payments to Black & Decker for any of these defense costs until February 2002, approximately eight years after being given notice of these claims. Liberty Mutual acted in breach of its obligation to defend Liberty Mutual, and judgment should enter accordingly for each of these five claims.

> **B.    Black & Decker Is Entitled To A Declaratory Judgment Regarding Further Defense Of The Alwell Asbestos Claim.**

The claims against Black & Decker in the litigation underlying four of these five claims have been dismissed, and Black & Decker does not anticipate incurring any further defense costs with respect to those claims. However, the Alwell Asbestos litigation is on-going, and Black & Decker is continuing to incur defense costs with respect to the Alwell Asbestos Claim. Black & Decker is entitled to a declaration that Liberty Mutual is obligated to continue to provide Black & Decker with a defense with respect to the Alwell Asbestos Claim.

> **C.    The Only Remaining Issue Is The Calculation Of Prejudgment Interest Owed To Black & Decker.**

In February 2002, Liberty Mutual paid the principal balance owed on these five claims, which totaled nearly $1.8 million. However, Liberty Mutual has not paid Black & Decker for the interest which had accrued on the unpaid defense costs between the time those costs were incurred and the time when Liberty Mutual finally made payment. As shown above, the interest that had accrued as of February 12, 2002 was over $1.1 million, and Black & Decker is entitled recover that amount to compensate it for the loss of use of the money it used to pay for its defense to these claims. The fact that Liberty Mutual paid the principal balance owed does not

allow them to avoid paying interest.  <u>Pacific Insurance Co. v. Eaton Vance Management</u>, 260 F.

Supp. 2d 334, 346 (D. Mass. 2003) ("Because the goal of prejudgment interest is to compensate

the prevailing party for the loss of use of money that rightfully belonged to it, there is no reason

[the insurer] should be able to avoid prejudgment interest merely by paying the disputed amount

before the court issues a judgment as to damages").  The only task remaining is the calculation of

the appropriate amount of interest owed for each of these claims, and judgment should enter for

Black & Decker on its claims for breach of contract and declaratory relief.  The conduct of

Liberty Mutual in handling these claims bears on Black & Decker's Chapter 93A claim, but that

aspect should be addressed in the separate action concerning the Chapter 93A claim.

By their attorneys,


  /s/Richard L. Binder              .
Jack R. Pirozzolo BBO# 400400
Richard L. Binder BBO# 043240
Willcox, Pirozzolo & McCarthy
Professional Corporation
50 Federal Street
Boston, Massachusetts 02110
(617) 482-5470