EXHIBIT

1

1        UNITED STATES DISTRICT COURT

2         DISTRICT OF MASSACHUSETTS

3    * * * * * * * * * * * * * * * *
                                   *
4    LIBERTY MUTUAL INSURANCE       *
       COMPANY                      *
5              Plaintiff            *
                                   *
6       VERSUS                      *    CA-96-10804-DPW
                                   *
7    BLACK AND DECKER CORP.         *
              Defendant             *
8                                   *
     * * * * * * * * * * * * * * * *

9
          BEFORE THE HONORABLE DOUGLAS P. WOODLOCK
10
           UNITED STATES DISTRICT COURT JUDGE
11
                      HEARING
12
                   MAY 18, 1998
13
     APPEARANCES:
14
          RALPH T. LEPORE, III, ESQ., SAMUEL ADAMS, ESQ.
15        AND ROBERT A. WHITNEY, ESQ., Warner & Stackpole,
          75 State Street, Boston, Massachusetts  02109,
16        on behalf of Plaintiff

17        JACK R. PIROZZOLO, ESQ. AND RICHARD L. BINDER, ESQ.,
          Willcox, Pirozzolo & McCarthy, 50 Federal Street,
18        Boston, Massachusetts  02110, on behalf of
          Defendant

19
                         Courtroom No. 8 - 2nd Floor
20                       Post Office & Courthouse Bldg.
                         Boston, Massachusetts 02109
21                       9:40 A.M. - 12:15 P.M.

22        Pamela R. Owens - Official Court Reporter
           204 Post Office & Courthouse Building
23              Boston, Massachusetts  02109

24   ALSO PRESENT:  Linda Biagioni

25   Method of Reporting:  Computer-Aided Transcription

1    this morning as I walk through it.  But are there any

2    other specific --

3            MR. PIROZZOLO:  As to the other sites, it's our

4    view that the pollution exclusion is not implied and all

5    the issues that have been briefed --

6            THE COURT:  Right.

7            MR. PIROZZOLO:  -- become pertinent to a lesser

8    or greater extent.

9            THE COURT:  Okay.  All right.  Now, let's deal

10   with what I consider to be the -- I also want to -- I

11   guess I do want to talk about this long-term exposure

12   stuff.  I don't understand what the dispute is here.  Is

13   there a cost-sharing agreement?

14           MR. PIROZZOLO:  It's an issue of fact, Your

15   Honor.  Liberty Mutual claims there is a cost-sharing

16   agreement, but there may be a cost-sharing agreement

17   among insurers.  There is no written agreement.  And our

18   position is --

19           THE COURT:  Are you getting a defense here?

20   Have you gotten a defense here?

21           MR. PIROZZOLO:  No.  Black & Decker has provided

22   its own defense.  There has been some payments toward the

23   costs of defense, but the amounts are in controversy.  I

24   think in view of Liberty Mutual's position, the fact issue

25   that remains goes to the dollars as to what percentage.

1       THE COURT:  Well, let me -- maybe, Mr. Lepore,

2    You can tell me what your position is on this.

3       MR. LEPORE:  Yes.  Thank you, Your Honor.

4       THE COURT:  I just don't understand.  Is there a

5    cost-sharing agreement among the insurers; is that it?

6       MR. LEPORE:  Yes.

7       THE COURT:  And roughly, what does it entail?

8       MR. LEPORE:  The dispute is whether or not --

9    this involves Black & Decker.  It's all the insurers and

10   Black & Decker.  Liberty has agreed to pick up "X"

11   percentage of the total defense dollars.  That is based on

12   a number of policies that were in existence for Black &

13   Decker over a period of years, including lost policies.

14   And the understanding was that Black & Decker would pick

15   up that portion of policies that no one could find.  All

16   right.  Now, since that agreement was reached and since we

17   have actually paid bills, there have been a couple of

18   policies that have been found.  So, the percentages need

19   to be changed.  That's the dispute.

20       We are not disputing that we have a duty to

21   defend those claims.  And that's what I thought this

22   lawsuit was about was the duty to defend coverage issues.

23   That's why we say that there's no dispute about coverage.

24   We have agreed that we have a duty to defend.  The

25   question is what is the percentage.

13

1      Now, until this lawsuit was filed, there had

2  been many payments made on the Mississippi hearing loss

3  cases, the Arkansas hearing loss cases --

4      THE COURT:  Let me just -- it may be different.

5  I'm sure it is different for each one of these.

6      MR. LEPORE:  Right.

7      THE COURT:  But what is the percentage for the

8  Arkansas hearing loss case and the Mississippi hearing

9  loss case?

10     MR. LEPORE:  I think it's close to 30 percent.

11  Thirty percent, Liberty's picking up.

12     MR. PIROZZOLO:  I don't know.

13     MR. LEPORE:  That's my distinct understanding.

14     THE COURT:  And are you current on that?

15     MR. LEPORE:  They haven't submitted us any bills

16  since this litigation started.

17     THE COURT:  And what's the understanding with

18  respect to the remaining 70 percent?

19     MR. LEPORE:  It's split among the other insurers

20  and Black & Decker has a percentage as well.  And I think

21  Black & Decker's is less than 30 percent.  What is it, 17

22  percent?

23     MR. WHITNEY:  I'm not sure of the number.  It's

24  less.

25     MR. LEPORE:  I think it's around 20 percent.

1    THE COURT:  And is this reduced to a writing?

2    MR. LEPORE:  Oh, yeah.

3    MR. PIROZZOLO:  No.

4    MR. LEPORE:  Yes, there is.

5    MR. PIROZZOLO:  There is a writing around, but

6    it's never been signed on one of the cases, only one.  On

7    the others, there is none.  Our position is they owe the

8    entire amount.

9    THE COURT:  Hold on.  Let me understand this.

10   So, there is -- is there a writing as to each of the five

11   active cases?

12   MR. PIROZZOLO:  No.

13   MR. LEPORE:  There is no writing.  There is a

14   writing on one case.  There is an agreement in place on

15   the others.  That is the understanding.  Mr. Whitney may

16   be able to --

17   MR. PIROZZOLO:  We don't agree with that.

18   MR. WHITNEY:  My understanding is the

19   Mississippi hearing loss claim, as it's been called,

20   is the largest of the cases.  There is a document, an

21   agreement that was apparently entered into between Black &

22   Decker and its primary and excess carriers.  Pursuant to

23   the agreement, payments were made and accepted by Black &

24   Decker pursuant to that agreement.  The agreement also

25   covers an Arkansas hearing loss claim.  It also covers by

1   agreement -- and it has a separate case for an Arkansas

2   hearing loss claim -- similar numbers, similar situation --

3           THE COURT:  But let me --

4           MR. WHITNEY:  I'm sorry.

5           THE COURT:  The agreement itself was -- the

6   document that you're referring to, is it executed by all

7   parties?

8           MR. WHITNEY:  I believe it was executed --

9   signed original pages by all the parties.  Yes.  In fact,

10  it is --

11          THE COURT:  That agreement is as to the

12  Mississippi hearing loss --

13          MR. WHITNEY:  Hearing loss claim.  There is a

14  separate one for the Arkansas hearing loss.

15          THE COURT:  Separate document, too?

16          MR. WHITNEY:  Separate document, my

17  understanding is.  The Mississippi vibration and hands-on

18  vibration claim --

19          THE COURT:  Right.

20          MR. WHITNEY:  -- that, with the understanding of

21  the parties -- and I think it's in the records that was

22  submitted -- was the payment schedule under the hearing

23  loss -- our agreement -- was carried over to the vibration

24  claims because it was involving the same parties, the same

25  attorneys, the same Black & Decker, same policies, and

1   payments were also made pursuant to the agreement for that

2   claim.  We were treated as a single case on the underlying

3   basis.  There are some other claims --

4           THE COURT:  Alwell and the maritime matters?

5           MR. WHITNEY:  Yes.  And those are covered in our

6   papers and which were not specifically covered by this.

7   However, a duty to defend was accepted.  And that's the

8   only issue that was originally raised was the duty to

9   defend in the papers.

10          THE COURT:  Well, is there a dispute now as to

11  money?  I mean, let's say you accept it.

12          MR. WHITNEY:  My understanding is that no one

13  submitted a bill for the Alwell claim, Your Honor.

14          THE COURT:  But what's the position of Liberty

15  Mutual with respect to Alwell and Maritime hearing

16  loss cases?  Is it that you accept the duty to defend --

17          MR. WHITNEY:  That's my understanding, Your

18  Honor.

19          THE COURT:  -- according to the schedule

20  established for --

21          MR. WHITNEY:  No.  That would be a separate

22  agreement, Your Honor, depending on -- between the parties

23  to work out.  There are other carriers with respect to

24  those claims as well.  And Black & Decker, before this

25  lawsuit, my understanding, again, was that the agreement

1    of these types of claims, because of the numerous parties

2    and the extensive nature of the time periods in dispute

3    that Black & Decker had with other potentially responsible

4    parties, other tool manufacturers, was an attempt to come

5    to some agreement amongst all the parties, carriers and

6    Black & Decker with respect to all of these so-called

7    long-term exposure claims.  My understanding is -- because

8    the Alwell claim is relatively new and because there's

9    a litigation pending -- that no bills were ever tendered

10   to Liberty Mutual or Liberty Mutual is going to pay and

11   enter into an agreement with Black & Decker and the other

12   excess carriers with respect to payments for

13   the defense.

14              THE COURT:  What about maritime hearing loss?

15              MR. WHITNEY:  I think that's the same situation.

16              THE COURT:  That is, no bills submitted --

17              MR. WHITNEY:  That's my understanding.

18              THE COURT:  -- to date?

19              MR. LEPORE:  Right.

20              MR. WHITNEY:  Again, that's more recent than the

21   other claims.  It's not as new as Alwell, but it's

22   more recent.

23              THE COURT:  Okay.

24              MR. WHITNEY:  That's my understanding.  My

25   understanding is, again with respect to long-term

1    exposure, there is no issue on the duty to defend.  In

2    other words, an agreement has been made to pay with

3    respect to defense.  There are some underlying agreements

4    which basically supersede the policies, but that's

5    governing payment schedules.

6        THE COURT:  Are they provisional agreements

7    for purposes of litigation or are they -- from your

8    perspective -- a settlement of the obligation to defend?

9        MR. WHITNEY:  My understanding is they were the

10   settlements of the obligation to defend of all the

11   carriers.  Again, the documents themselves, the parties

12   were able to take out of the document after a certain

13   period of time, to give notice since they were canceling

14   the agreement to pay.  That's never been done.

15       THE COURT:  I'm sorry.  I misunderstand.

16       MR. WHITNEY:  Under the agreement itself, any of

17   the parties can withdraw.  That's never been done.  Black

18   & Decker has never submitted a withdrawal to the agreement

19   saying "we don't want to -- we no longer agree with the

20   payment schedule, we no longer agree with anything."

21   Those claims have now been brought into this lawsuit,

22   although the agreements are still valid and enforcible.

23       THE COURT:  All right.  Now, let me understand

24   from your perspective what, then, a dispute would be in

25   this case.  Is it simply an accounting dispute?

1       MR. WHITNEY:  My understanding is that one of

2   the problems they have is with respect to the percentage

3   that was assigned to Black & Decker under the original

4   hearing loss claim as a result of an additional finding of

5   several policies.  It was before this lawsuit was filed,

6   there were three or four additional policies that would

7   change their percentage from something like 27 to 23 in

8   the claim that they want.  And if you look at their motion

9   papers, it actually says the only relief they're seeking

10  is the value of the difference between what's set forth in

11  the agreement and the money they ultimately think they

12  would have to pay which is the percentage change.  So,

13  essentially, they're seeking to enforce a revision of what

14  we call the settlement agreement as to the defense

15  obligations for the Mississippi hearing loss claim and the

16  other claims that are being governed under that agreement.

17  And, again, in their motion papers, it is very specific.

18  That's the relief they seek, is the value, the dollar

19  difference.  In other words, they want the percentage

20  changed.  That's all.

21      THE COURT:  What is your understanding of the

22  opportunity for revision when lost policies are found?

23      MR. WHITNEY:  My understanding of the way the

24  intent was at the time was that --

25      THE COURT:  Is there some governing -- put to

1    one side the intent.   Is there some kind of governing

2    language on revisions?

3              MR. WHITNEY:   On revisions to the agreement?   I

4    think the only governing language where the parties could

5    agree in writing to change it and parties could opt out of

6    the agreement -- in other words, if they didn't agree with

7    the changes, they could leave.   They could say, "We're no

8    longer going to be governed by this."   And, theoretically,

9    there was the carrier, then a suit could entail with

10   respect to that carrier who was Black & Decker.   Black &

11   Decker could theoretically basically say whatever payments

12   he's gotten so far could be credited and they could move

13   against the carrier.   But, again, in this case, my

14   understanding is that the carriers all agreed to pay it --

15   I mean, the primary carriers agreed with respect to the

16   duty to defend.

17             THE COURT:   With respect to these new-found

18   policies, what is the review on that?   Should there be a

19   revision?

20             MR. WHITNEY:   Yes.   We don't think there's a

21   dispute.   These are not the originals -- not the policies

22   in this case, Your Honor.   These are the policies that

23   were found prior to this case.

24             THE COURT:   Right.

25             MR. WHITNEY:   And there's some correspondence in

1  the record back and forth, I think, in our opposition

2  papers.

3          MR. LEPORE:  We don't dispute that.

4          MR. WHITNEY:  No, there's no dispute on that.

5  And that's the point of the brief that we submitted to

6  Your Honor with respect to the long-term claims, that

7  there is no active dispute on the defense obligation.

8  They have raised an indemnity obligation.  If you'll

9  notice in the papers, again, it doesn't really set forth

10 any facts upon which summary judgment could be entered

11 with the indemnity issue.  With respect to the defense --

12         THE COURT:  Is there any realistic likelihood

13 that indemnity --

14         MR. WHITNEY:  No.  I think on most of them, it

15 is not, especially the hearing, I think there's been

16 dismissals on the hearing loss, on the two hearing loss

17 claims.  The vibrations, I don't believe there's an

18 anticipated indemnity.  In other words, the payments

19 anticipated by Black & Decker are low.  The Alwell

20 claim, I think so far, their numbers are zero.  I believe

21 on the -- if I remember, aside from memory, Your Honor --

22 the maritime hearing loss claim, I think, also, so far the

23 estimated damages are also zero for indemnity purposes.  I

24 think Ralph probably has the numbers.

25         MR. LEPORE:  The fact is, Judge, the Arkansas

1    hearing loss case has been dismissed with no payment.

2           THE COURT:  Right.

3           MR. LEPORE:  The Mississippi hearing loss case

4    has been dismissed with no payment.  And the maritime

5    hearing loss case has been dismissed with no payment.

6           The two that remain open are the Mississippi

7    vibration claims and the <u>Alwell</u> claims, both of which

8    are the new ones.

9           THE COURT:  Right.  Is that right?  Is the

10   Mississippi -- is the maritime hearing loss dismissed with

11   no payment or is it vibration --

12          MR. LEPORE:  Yes.

13          MR. PIROZZOLO:  Yes.

14          THE COURT:  It is the maritime case?

15          MR. PIROZZOLO:  Yes, Your Honor.

16          MR. BINDER:  Yes.

17          THE COURT:  So, Arkansas hearing loss,

18   Mississippi hearing loss, and maritime hearing loss are

19   dismissed with no --

20          MR. PIROZZOLO:  Dismissed with no damages.

21          THE COURT:  Okay.  So there's no indemnity issue

22   with respect to those?

23          MR. LEPORE:  That's correct.

24          MR. PIROZZOLO:  That's right.

25          THE COURT:  And we simply don't know, although

23

1    your anticipation is that <u>Alwell</u>, Mississippi, and

2    Vibrations will not result in indemnity?

3              MR. LEPORE:  (Shaking head up and down).

4              THE COURT:  Now, do I have the documents that

5    purport to constitute the agreement?

6              MR. PIROZZOLO:  There are no documents, Your

7    Honor.

8              THE COURT:  Well, do I have them in the record?

9              MR. WHITNEY:  I was just looking right now.

10             MR. PIROZZOLO:  I have it in front of me, Your

11   Honor.

12             MR. WHITNEY:  There are two agreements, Your

13   Honor.

14             THE COURT:  Okay.  I just want to understand

15   where are they in the record.

16             MR. WHITNEY:  I'm going to look right now.

17             THE COURT:  All right.  So what kind of money

18   are we talking about on this long-term exposure stuff?

19   Short dollar stuff?

20             MR. LEPORE:  Yes.  It's not a lot.  I mean, I

21   don't have the precise numbers.  I think the defendants

22   would have a better understanding because they haven't

23   submitted any bills to us since the litigation started.

24   But the percentage difference between what we claim they

25   agreed to, which they deny now, and the difference with it

24

1    is about four percent, I think.  And, so --

2                MR. WHITNEY:  Small.

3                MR. LEPORE:  -- even if it's four percent of a

4    hundred thousand dollars, it's $4,000.  So, calculate it

5    to a million and it's only $40,000.  I mean, it's small

6    dollars.

7                THE COURT:  Okay.  Is there any dispute that it

8    is short money, Mr. Pirozzolo?

9                MR. PIROZZOLO:  Yes, Your Honor.  I dispute a

10   great deal of what's been said here.

11               THE COURT:  Well, no doubt.  But as to the

12   amount involved, are we talking about short dollars here?

13               MR. PIROZZOLO:  Oh, no, no.

14               THE COURT:  How much?

15               MR. PIROZZOLO:  It's a substantial amount.

16               THE COURT:  In what range?

17               MR. PIROZZOLO:  Over -- I think over a hundred

18   thousand.  Let's see what we have here.  We have got on

19   Mississippi Vibration, 380,000.

20               THE COURT:  Well, let me see.  Is that the

21   380,000 -- that is your 30 percent?

22               MR. PIROZZOLO:  Well, we don't agree with the 30

23   percent.

24               THE COURT:  Well, that may or may not be true.

25   What I want to understand is what is it that they have --

1    what amount that they claim they are not responsible for?

2            MR. PIROZZOLO:  I don't have that breakdown.

3    These are the amounts we have paid.

4            THE COURT:  That's the amount that you have paid

5    out on --

6            MR. PIROZZOLO:  Black & Decker has paid.  That's

7    the table that should be in the papers.

8            THE COURT:  Now, have you submitted bills or

9    invoices for your defense to the primary insuring

10   consortium, I guess, is what it is.

11           MR. PIROZZOLO:  I believe no bills have been

12   submitted.  I believe no bills have been submitted since

13   this case began.

14           THE COURT:  Why not?

15           MR. PIROZZOLO:  Because it's been the subject of

16   litigation here.  And, so, we've been awaiting the

17   determination.  All bets are off once Liberty Mutual

18   brought the case.

19           THE COURT:  Well, but it strikes me that there

20   is some degree of self-inflicted wound then.  Because to

21   the degree that we're really talking about whether or not

22   you should have any obligation yourself to undertake

23   payments, it's not the full amount.  It is some portion,

24   say 30 percent, because that was the figure that was used

25   here.  And, so, you're entitled to 70 percent of it that

1    you have been pursuing.

2            MR. PIROZZOLO:  Well, I'll have to -- I can't --

3    between now and Friday, I can get the figures, but I just

4    don't have them here.

5            THE COURT:  Well, I just want to understand

6    because I think this is one that I can take up separately

7    and deal with relatively -- I think relatively promptly in

8    this context.  The suggestion is that there is a writing

9    which memorializes an agreement between the parties.  And,

10   so, I'll take a look at that writing.  I haven't looked at

11   it now.  Frankly, I haven't waded through the record to

12   see if --

13           MR. PIROZZOLO:  I have it in front of me, Your

14   Honor.

15           THE COURT:  What's the citation?

16           MR. PIROZZOLO:  It is an unsigned letter.

17           THE COURT:  What does it say?

18           MR. PIROZZOLO:  Unsigned document.  It is at the

19   appendix "Miscellaneous" -- I'm sorry -- 27, page 59.

20   Unsigned and it's entitled "Interim."

21           THE COURT:  Why don't you pass it up, please.

22           MR. PIROZZOLO:  It's all bound.  As far as --

23   that's the only writing in the record of any kind on this

24   subject.  I believe Mr. Whitney is blending the cautionary

25   agreements among defendants with the obligation to pay

1    defense costs.

2            THE COURT:  Is this the document?

3            MR. WHITNEY:  Your Honor, there are several

4    documents.  In the summary judgment record, the defendants

5    did not submit a cost-sharing agreement.  There's another

6    agreement.  I don't have it with me here.  But if you'll

7    look in the defendant's initial memorandum that they

8    submitted for summary judgment --

9            THE COURT:  Well, I guess at this point --

10           MR. WHITNEY:  Only because, Your Honor, they

11   state -- they admit that there are agreements.  It says --

12   I'll just read it for the record.  Black & Decker --

13           THE COURT:  What page?

14           MR. WHITNEY:  Page -- I'm sorry -- 60 --

15   six-zero -- of Black & Decker's original brief.  That's

16   their original summary judgment.  About halfway down the

17   page, "Black & Decker and its insurers allocate a defense

18   cost pursuant to a cost-sharing agreement with each

19   insurer paying a proportion of the same for the exposure

20   period to which it provided coverage.

21           THE COURT:  Right.  But --

22           MR. WHITNEY:  And then if you go over -- and

23   then if you look --

24           THE COURT:  -- the real issue, I guess, is

25   what's the nature of the agreement?  I read that agreement

1    -- the language of that very quickly to indicate that it

2    is an interim agreement not finally resolving the

3    respective responsibilities of the parties.

4         MR. WHITNEY:  Well, I think that's -- I think

5    that's true.  The idea of the agreements were that they

6    could ultimately be changed by the parties.  But

7    throughout the entire course of the underlying action,

8    the defense costs were being paid by the defense group --

9    I mean, the insurers -- together along with Black &

10   Decker.

11        THE COURT:  The majority of the defense costs

12   are being paid.

13        MR. WHITNEY:  That's true, pursuant to the

14   agreement that Black & Decker also agreed to.  If you

15   actually look at page 63 of their brief, again, what I

16   mentioned before, they're considering here -- if you look

17   at the top of the page.  It goes, "Nonetheless, Liberty

18   Mutual has not reimbursed Black & Decker for the portion

19   of the defense costs that Black & Decker erroneously paid

20   on the basis of the misrepresentation that the 1964 to

21   1967 policies did not exist.  The Black & Decker group

22   thus seeks payment of the defense costs Liberty Mutual

23   wrongfully withheld.  So, you see, that's not the entire

24   defense costs.  This is a three-year period that we were

25   talking about before that needed to be adjusted.  Those

29

1    are the three policies.  Black & Decker did have a share

2    contrary to what Mr. Pirozzolo just represented.  It was a

3    party to the agreement and, in fact, it accepted payments

4    pursuant to the agreement.  So, to the extent that he

5    claims now that if we signed, it's only interim,

6    nevertheless, the parties were --

7            THE COURT:  The question of whether or not, by

8    their conduct, they have adopted the agreement or ratified

9    the agreement -- or however you characterize it -- is one

10   issue.

11           MR. WHITNEY:  Yes.

12           THE COURT:  The second issue is what does the

13   agreement mean.  Does it simply mean this is something

14   we're going to resolve finally at a later point, but for

15   present purposes we'll back up defense costs in this

16   fashion.  And that's what it seems to mean.  That is,

17   that we will come back to and resolve definitively the

18   respective responsibilities in litigation, say, such as

19   this.  Isn't that what the "interim" means?

20           MR. WHITNEY:  I don't have it in front of me,

21   Your Honor.  I'm sorry.  But I think that it's interim in

22   the sense that it was described as interim because they

23   were working on a percentage and cost sharing.  It wasn't

24   interim in the sense that "this is only during the time

25   period now, we're going to sue you later."  I don't think

that was the deal at all.  In fact, Black & Decker picked

up a portion of all the defense costs as a result of this

understanding that there were many years of coverage,

historical years of coverage for which there was no

evidence of any policy coverage and future time periods

later on in time when injuries were supposedly being

manifested by workers post any other carriers being on the

list.  And, so, Black & Decker was picking up a percentage

share of the later time periods where they were basically

self-insured in that sense.

THE COURT:  Okay.  I guess I don't want to spend

much more time on this aspect of it, except that I do want

to have the relevant writings -- what the parties consider

to be the relevant writings -- in place here so that

I have, at least, had a chance to look at them.  My

preliminary reading of it, as I say, is that there may

have been an agreement manifested by Black & Decker to

deal with this on an interim basis.  But that's not

necessarily an agreement to resolve finally the respective

responsibilities as to defense costs.  And if it's not,

then the long-term exposure cases come rolling back into

the case itself.

So, if there are other documents other than the

one that Mr. Pirozzolo passed up to me, you'll perhaps

file those by the close of business tomorrow.

31

1             MR. LEPORE:  Fine.

2             MR. PIROZZOLO:   From the record, Your Honor, or

3  outside of the record?

4             THE COURT:  Outside of the record.  I want to

5  get to this.  This isn't -- it's clear to me that we're

6  not going to be resolving definitively a whole series of

7  issues like this.  I want to get an idea of what my next

8  steps are going to be and whether or not I can break out

9  bits and pieces of it.  Maybe I can break out bits and

10  pieces.  Maybe I can't.  I don't know about these

11  long-term exposure cases.  I had this simple-minded hope

12  that maybe I could break through that one, but now I know

13  a bit more.  So, you'll file with me whatever --

14             MR. LEPORE:  By tomorrow, Your Honor.

15             THE COURT:  Okay.  Now --

16             MR. PIROZZOLO:  Your Honor, would that include

17  some additional information from our side as well?

18             THE COURT:  Well, whatever it is that people

19  claim is the agreement here and we'll talk about the

20  agreement.  You say there's no agreement at all.  Did you

21  receive payments?

22             MR. PIROZZOLO:  I think payments were received

23  as an interim agreement.  But it's among the carriers.  In

24  other words, the carriers get together and say "this is

25  what we'll pay."  But the law is that they have to pay the

32

1    full -- each carrier is liable for the full defense cost.

2    And, so --

3         THE COURT:  Well, they may be.  But they are not

4    all going to pay it at the same time.  And, furthermore,

5    you can compromise the claim in some fashion.

6         MR. PIROZZOLO:  Why should we compromise what

7    we're owed?  We were owed -- we may accede to it, but we

8    are owed it.

9         THE COURT:  I suppose you do that because if you

10   are a signatory to it or manifest ratification of it, you

11   do that because there's some dispute that you're uncertain

12   about.  And, so, it's better to have some money than no

13   money or have owed directly into litigation from the very

14   beginning.

15        In any event, I take it that you received some

16   money during this time period and accepted the money and

17   submitted bills according to the agreement.  You say it's

18   an imposition on you?

19        MR. PIROZZOLO:  Anticipating that I have to get

20   ahold of two different people, whose whereabouts I don't

21   know right now, I wonder if we could extend it until

22   Wednesday to get back to Your Honor.

23        THE COURT:  Yes, yes.

24        MR. PIROZZOLO:  I may be able to do it tomorrow.

25   But if they're not available, I just --

EXHIBIT

2

# WILLCOX, PIROZZOLO AND McCARTHY

### PROFESSIONAL CORPORATION

### FIFTY FEDERAL STREET

### BOSTON, MASSACHUSETTS 02110

HAROLD M. WILLCOX (1925-1975)
JACK R. PIROZZOLO
RICHARD F. McCARTHY
RICHARD L. BINDER
RICHARD E. BENNETT
JUDITH S. ZISS
CHRISTOPHER R. GODDU
KATHERINE L. YOUNG

OF COUNSEL
RICHARD P. CROWLEY
(REGISTERED PATENT ATTORNEY)

TELEPHONE (617) 482-5470
TELECOPIER (617) 423-1572

February 14, 2000

**HAND DELIVERED**

Robert A. Whitney, Esquire
Holland & Knight, LLP
One Beacon Street
Boston, MA 02108

> Re:  Liberty Mutual Insurance Co. v.
>      The Black & Decker Corp., et als.
>      Civil Action No. 96-10804-DPW

Dear Rob:

I enclose herewith binders of numbered invoices and summary charts for the following matters sites:

California Maritime Hearing Loss: 11/15/95 through 3/31/97; Nos. SUPP 2-885 through SUPP 2-930, SUPP 1-00005 to SUPP 1-00008, SUPP 1-00011 to SUPP 1-13, SUPP 1-00019 to SUPP 1-20, SUPP 1-01260, SUPP 1-00023, SUPP 1-00026, SUPP 1-00029, SUPP 1-00032, SUPP 1-00002.

Maritime Asbestos Volume I: 5/12/94 through 5/9/96; Nos. SUPP 2-931 to SUPP 2-1266.

Maritime Asbestos Volume II: 5/29/96 through 10/29/99; Nos. SUPP 2-1267 to SUPP 2-1420.

Alwell: 10/29/99 through 12/30/99; Nos. SUPP 2-00074-C to SUPP 2-00074-J.

**WILLCOX, PIROZZOLO & McCARTHY**

Robert A. Whitney, Esquire

-2-                                    February 14, 2000


Pennsylvania Benzene: 10/29/99 through 12/13/99;
Nos. SUPP 2-00357-C to SUPP 2-00357-F.

Please contact me if you have any questions.

Very truly yours,

Jack R. Pirozzolo

JRP:rjp
Enclosures

WILLCOX, PIROZZOLO AND McCARTHY

PROFESSIONAL CORPORATION

FIFTY FEDERAL STREET

BOSTON, MASSACHUSETTS 02110

HAROLD M. WILLCOX (1925-1975)
JACK R. PIROZZOLO
RICHARD F. McCARTHY
RICHARD L. BINDER
RICHARD E. BENNETT
JUDITH S. ZISS
CHRISTOPHER R. GODDU

TELEPHONE (617) 482-5470
TELECOPIER (617) 423-1572

OF COUNSEL
RICHARD P. CROWLEY
(REGISTERED PATENT ATTORNEY)

October 12, 2000

**VIA HAND DELIVERY**

Ralph T. Lepore, III, Esquire
Holland & Knight
One Beacon Street
Boston, MA 02108

　　　　　Re:  Liberty Mutual Insurance Co. v.
　　　　　　　 The Black & Decker Corp., et als.
　　　　　　　 Civil Action No. 96-10804-DPW

Dear Ralph:

　　　　We are sending to you herewith the invoices
pertaining to defense costs (most of which have previously
been produced) with respect to the Arkansas Hearing Loss,
Mississippi Hearing Loss and Mississippi Hand/Arm Vibration
Long-Term Exposure Claims.  These are organized in a
convenient format for your review.  There are five
notebooks of material; each contains the invoices with
respect to the pertinent claims and summaries of the
amounts of those invoices allocable to Black & Decker.  In
addition, we have included, where applicable, an
explanation of documents concerning shared local counsel
expenses.

　　　　Also enclosed, to update the production, are
additional invoices for recent defense costs in the Alwell
and Maritime Asbestos Long-Term Exposure Claim, together

## WILLCOX, PIROZZOLO & McCARTHY

Ralph T. Lepore, III, Esquire
-2-                                        October 12, 2000


with updated final pages of the summaries of the costs
through the date of the last invoice.  The Alwell invoices
are numbered SUPP 2-0074-P through SUPP 2-0074-W and the
Maritime Asbestos invoices are numbered SUPP 2-1420-A
through SUPP 2-1420-D.  The Alwell summary page is numbered
SUMM 2-B and the Maritime Asbestos summary page is numbered
SUMM 0014.  You may want to add this material to the
notebooks containing invoices for the Alwell and Maritime
Asbestos claims, previously provided.

                         Very truly yours,

                         Jack R. Pirozzolo

JRP:pw
Enclosures

# WILLCOX, PIROZZOLO AND McCARTHY

### PROFESSIONAL CORPORATION

### FIFTY FEDERAL STREET

### BOSTON, MASSACHUSETTS 02110

HAROLD M. WILLCOX (1925-1975)
JACK R. PIROZZOLO
RICHARD F. McCARTHY
RICHARD L. BINDER
RICHARD E. BENNETT
JUDITH S. ZISS
CHRISTOPHER R. GODDU

TELEPHONE (617) 482-5470
TELECOPIER (617) 423-1572

OF COUNSEL
RICHARD P. CROWLEY
(REGISTERED PATENT ATTORNEY)

March 30, 2001

Ralph T. Lepore, III, Esquire
Holland & Knight
10 St. James Avenue
Boston, MA 02116

> Re:  Liberty Mutual Insurance Co. v.
> The Black & Decker Corp., et als.
> Civil Action No. 96-10804-DPW

Dear Ralph:

I am forwarding to you herewith additional invoices recently provided to us relating to the Alwell (SUPP 2-0074X; SUPP 2-0074Y; SUPP 2-0074Z; SUPP 2-1641-1655), Pennsylvania Benzene (SUPP 2-1656-1661) and Maritime Asbestos (SUPP 2 1629-1640) long term exposure cases. Also enclosed are supplemental schedules of these invoices.

In reviewing the requests that your staff made for documents in the Miles & Stockbridge production, we noted that no request was made for a number of invoices that were part of that production. These invoices pertain to the Abarca long term exposure matter (SUPP 2-1580-1628; SUPP 2-1662-1663). As this no doubt was an oversight, we have taken the liberty of making copies and providing them to you, along with the pertinent schedule. (One of these invoices was recently provided to us.)

We also enclose a revised schedule of the invoices concerning the Abarca claim, which lists the portion of the Brown, McCarroll & Oaks Hartline invoices paid by Black & Decker (as Brown McCarroll represented several parties as local counsel, Black & Decker paid only a portion of that firm's invoices).

(L-2201)

**WILLCOX, PIROZZOLO & McCARTHY**

Ralph T. Lepore, III, Esquire

March 30, 2001

-2-

      I also enclose status reports concerning the Alwell and Maritime Asbestos matters that Black & Decker requests you forward to Liberty Mutual (SUPP 2-1664-1674).

Very truly yours,

Jack R. Pirozzolo

JRP:pw
Enclosures

# WILLCOX, PIROZZOLO AND McCARTHY

### PROFESSIONAL CORPORATION

### FIFTY FEDERAL STREET

### BOSTON, MASSACHUSETTS 02110

HAROLD M. WILLCOX (1925-1975)
JACK R. PIROZZOLO
RICHARD F. McCARTHY
RICHARD L. BINDER
RICHARD E. BENNETT
JUDITH S. ZISS
CHRISTOPHER R. GODDU

TELEPHONE (617) 482-5470

TELECOPIER (617) 423-1572

OF COUNSEL
RICHARD P. CROWLEY
(REGISTERED PATENT ATTORNEY)

July 11, 2001

Ralph T. Lepore, III, Esquire
Holland & Knight
10 St. James Avenue
Boston, Massachusetts  02116

          Re:  Liberty Mutual Insurance Co. v.
               The Black & Decker Corp., et als.
               Civil Action No. 96-10804-DPW

Dear Ralph:

          I enclose some additional invoices recently provided
to us regarding the Alwell (SUPP 2-1675-1684), Maritime Asbestos
(SUPP 2-1685-1692) and Abarca (SUPP 2-1693) Long-Term Exposure
Claims.

                              Very truly yours,

                              Jack R. Pirozzolo

JRP:ps
Enclosures

7/13/01                                         5-7586-4

# WILLCOX, PIROZZOLO AND McCARTHY

### PROFESSIONAL CORPORATION

### FIFTY FEDERAL STREET

### BOSTON, MASSACHUSETTS 02110

HAROLD M. WILLCOX (1925-1975)
JACK R. PIROZZOLO
RICHARD F. McCARTHY
RICHARD L. BINDER
RICHARD E. BENNETT
JUDITH S. ZISS
CHRISTOPHER R. GODDU

TELEPHONE (617) 482-5470
TELECOPIER (617) 423-1572

OF COUNSEL
RICHARD P. CROWLEY
(REGISTERED PATENT ATTORNEY)

February 4, 2002

Ralph T. Lepore, III, Esquire
Holland & Knight
10 St. James Avenue
Boston, MA  02116

> Re:  Liberty Mutual Insurance Co. v.
>      The Black & Decker Corp., et als.
>      Civil Action No. 96-10804-DPW

Dear Ralph:

We are sending to you herewith some recent invoices pertaining to defense costs in the Maritime Asbestos and Alwell Long-Term Exposure Claims, together with updated summaries of the costs through the date of the last invoice.  The invoices are labeled Supp 2-1694-1725.

You may want to add this material to the notebooks of invoices that we previously provided.

Very truly yours,

Jack R. Pirozzolo

JRP:ps
Enclosures

2/5/02

57586-4

# WILLCOX, PIROZZOLO AND McCARTHY

### PROFESSIONAL CORPORATION

### FIFTY FEDERAL STREET

### BOSTON, MASSACHUSETTS 02110

HAROLD M. WILLCOX (1925-1975)
JACK R. PIROZZOLO
RICHARD F. McCARTHY
RICHARD L. BINDER
RICHARD E. BENNETT
JUDITH S. ZISS
CHRISTOPHER R. GODDU

TELEPHONE (617) 482-5470

TELECOPIER (617) 423-1572

OF COUNSEL
RICHARD P. CROWLEY
(REGISTERED PATENT ATTORNEY)

March 26, 2002

**BY HAND DELIVERY**

Ralph T. Lepore, III, Esquire
Holland & Knight
10 St. James Avenue
Boston, MA  02116

> Re:  Liberty Mutual Insurance Co. v.
>       The Black & Decker Corp., et als.
>       Civil Action No. 96-10804-DPW

Dear Ralph:

    I enclose bound copies of invoices and summaries documenting the costs and interest incurred by Black & Decker with respect to twenty-four environmental sites. They are marked:

```
SUPP-3 00001 to 00268
SUPP-3 00274 to 00987
SUPP-3 00990 to 01324
SUPP-3 01681 to 01761
SUPP-3 01779 to 01987
```

Very truly yours,

Jack R. Pirozzolo

JRP:jn
Enclosures

**BLACK AND DECKER**
**AMOUNTS DUE FROM LIBERTY MUTUAL WITH INTEREST**

| CLAIM | COSTS | INTEREST | TOTAL |
|---|---|---|---|
| **Environmental Sites** | | | |
| A-1 Defense and Indemnification Costs | $ 22,877.94 | $ 18,796.84 | $ 41,674.78 |
| Beacon Heights Defense and Indemnification Costs | $ 97,506.35 | $ 115,267.94 | $ 212,774.29 |
| Bostik Defense and Indemnification Costs | $ 9,030,681.66 | $ 5,499,291.98 | $ 14,529,973.64 |
| BROS Defense and Indemnification Costs | $ 442,085.15 | $ 388,558.01 | $ 830,643.16 |
| Douglassville Defense Costs | $ 14,272.31 | $ 15,513.87 | $ 29,786.18 |
| Dudley & Eddy Defense Costs | $ 70,797.23 | $ 82,909.37 | $ 153,706.60 |
| Farrel Defense and Indemnification Costs | $ 9,783,633.76 | $ 5,277,058.44 | $ 15,060,692.20 |
| Fort Wayne Defense and Indemnification Costs | $ 89,990.43 | $ 74,132.47 | $ 164,122.90 |
| Harmonic Drive Defense and Indemnification Costs | $ 344,220.38 | $ 228,439.19 | $ 572,659.57 |
| Huth Oil Defense and Indemnification Costs | $ 156,598.62 | $ 88,424.76 | $ 245,023.38 |
| Jaffrey Sanitary Landfill Defense and Indemnification Costs | $ 16,219.08 | $ 12,928.36 | $ 29,147.44 |
| Laurel Park Defense and Indemnification Costs | $ 54,308.67 | $ 72,191.26 | $ 126,499.93 |
| Medway Defense Costs | $ 5,972.79 | $ 5,072.92 | $ 11,045.71 |
| New Bedford Defense and Indemnification Costs | $ 347,698.56 | $ 415,642.20 | $ 763,340.76 |
| Old Southington Landfill Defense and Indemnification Costs | $ 71,145.50 | $ 52,999.17 | $ 124,144.67 |
| PAS Fulton Indemnification Costs | $ 65,173.22 | $ 54,156.91 | $ 119,330.13 |
| PAS Oswego Indemnification Costs | $ 74,384.54 | $ 44,444.00 | $ 118,828.54 |
| Review Avenue/NYC Landfills Indemnification Costs | $ 70,493.00 | $ 88,564.01 | $ 159,057.01 |
| Shaffer Landfill Defense and Indemnification Costs | $ 238,845.11 | $ 212,318.58 | $ 451,163.69 |
| SHW Defense and Indemnification Costs | $ 491,266.72 | $ 417,086.27 | $ 908,352.99 |
| Simpsonville Defense Costs | $ 8,817.20 | $ 12,640.27 | $ 21,457.47 |
| SRSNE Defense and Indemnification Costs | $ 153,038.72 | $ 134,785.43 | $ 287,824.15 |
| Whitman Defense and Indemnification Costs | $ 2,431,406.78 | $ 2,050,950.29 | $ 4,482,357.07 |
| WW Cross Lagoon Defense and Indemnification Costs | $ 327,403.58 | $ 374,144.26 | $ 701,547.84 |
| WW Cross Tack Pile Defense and Indemnification Costs | $ 1,303,837.52 | $ 432,154.26 | $ 1,735,991.78 |
| **Long Term Exposure Claims** | | | |
| Abarca Bostik Defense Costs | $ 189.06 | $ 184,485.19 | $ 184,674.25 |
| Alwell Defense Costs | $ 2,053.50 | $ 62,907.03 | $ 64,960.53 |
| Arkansas Hearing Loss Defense Costs | $ 568,554.45 | $ 507,940.40 | $ 1,076,494.85 |
| Maritime Asbestos Defense Costs | $ 3,677.41 | $ 723,099.59 | $ 726,777.00 |
| Maritime Hearing Loss Defense Costs | $ - | $ 55,072.65 | $ 55,072.65 |
| Mississippi Hearing Loss Defense Costs | $ 1,224,957.09 | $ 1,549,535.92 | $ 2,774,493.01 |
| Mississippi Hand/Arm Vibration Defense Costs | $ 240,340.40 | $ 257,970.88 | $ 498,311.28 |
| Pennsylvania Benzene Defense Costs | $ - | $ 106,516.12 | $ 106,516.12 |
| **TOTAL:** | $ 27,752,446.72 | $ 19,615,998.85 | $ 47,368,445.57 |

# WILLCOX, PIROZZOLO AND McCARTHY

## PROFESSIONAL CORPORATION

### FIFTY FEDERAL STREET

### BOSTON, MASSACHUSETTS 02110

HAROLD M. WILLCOX (1925-1975)
JACK R. PIROZZOLO
RICHARD F. McCARTHY
RICHARD L. BINDER
RICHARD E. BENNETT
JUDITH S. ZISS
CHRISTOPHER R. GODDU

TELEPHONE (617) 482-5470
TELECOPIER (617) 423-1572

OF COUNSEL
RICHARD P. CROWLEY
(REGISTERED PATENT ATTORNEY)

July 23, 2002

Ralph T. Lepore, III, Esquire
Holland & Knight
10 St. James Avenue
Boston, MA  02116

        Re:  Liberty Mutual Insurance Co. v.
            The Black & Decker Corp., et als.
            Civil Action No. 96-10804-DPW

Dear Ralph:

      We are sending to you herewith some recent invoices pertaining to defense costs in the Alwell Long-Term Exposure Claim.  The invoices are labeled Supp 2-1726-1729.

                    Very truly yours,

                    Jack R. Pirozzolo

JRP:ps
Enclosures

# WILLCOX, PIROZZOLO AND McCARTHY

### PROFESSIONAL CORPORATION

#### FIFTY FEDERAL STREET

#### BOSTON, MASSACHUSETTS 02110

HAROLD M. WILLCOX (1925-1975)
RICHARD P. CROWLEY (1927-2001)

JACK R. PIROZZOLO
RICHARD F. McCARTHY
RICHARD L. BINDER
RICHARD E. BENNETT
JUDITH S. ZISS
DAVID M. MAGEE
(REGISTERED PATENT ATTORNEY)

OF COUNSEL
GERRY A. BLODGETT
(REGISTERED PATENT ATTORNEY)

TELEPHONE (617) 482-5470
TELECOPIER (617) 423-1572

JACK R. PIROZZOLO
DIRECT DIAL: 617-482-5590
JPIROZZOLO@WPMLAW.COM

December 3, 2002

Ralph T. Lepore, III, Esquire
Holland & Knight
10 St. James Street
Boston, Massachusetts  02116

> Re:  Liberty Mutual Insurance Co. v.
>      The Black & Decker Corp., et als.
>      <u>Civil Action No. 96-10804-DPW</u>

Dear Ralph:

  I enclose copies of recent invoices for defense costs incurred by Black & Decker with respect to the Alwell and Maritime Asbestos Long-Term Exposure Claims.  The invoice in connection with the Alwell claim is labeled SUPP-2 01730 to SUPP-2 01731 and the invoices in connection with the Maritime Asbestos Claim are labeled SUPP-2 1732 to SUPP-2 1736.

  I also enclose updated cost summaries for those claims.  As you will see from the cost summaries, the principal amount currently due in connection with Alwell is $6,289.37, which includes invoices that were sent to you as early as February 4, 2002 and the principal amount currently due in connection with Maritime Asbestos is $4,657.08 which includes invoices sent to you as early as February 4, 2002. There is also a principal of $189.06 due in connection with the Maritime Asbestos claim, representing an invoice in the amount of $189.00, sent to you on February 4, 2002 (the payment that Liberty Mutual made on February 12, 2002 is $.06 less than the amount due on invoices that Liberty Mutual

Ralph T. Lepore, Esquire
-2-                                              December 3, 2002

received prior to February 4, 2002).

                        Very truly yours,

                        Jack R. Pirozzolo

JRP:jn
Enclosures

# WILLCOX, PIROZZOLO AND McCARTHY

### PROFESSIONAL CORPORATION
### FIFTY FEDERAL STREET
### BOSTON, MASSACHUSETTS 02110

HAROLD M. WILLCOX (1925-1975)
RICHARD F. CROWLEY (1927-2001)

JACK R. PIROZZOLO
RICHARD F. McCARTHY
RICHARD L. BINDER
RICHARD E. BENNETT
JUDITH S. ZISS
DAVID M. MAGEE
  (REGISTERED PATENT
  ATTORNEY)
JASON A. PIROZZOLO

OF COUNSEL
GERRY A. BLODGETT
  (REGISTERED PATENT
  ATTORNEY)

TELEPHONE (617) 482-5470

TELECOPIER (617) 423-1572

January 2, 2004

Ralph T. Lepore, III, Esquire
Holland & Knight
10 St. James Street
Boston, Massachusetts 02116

Re:  Liberty Mutual Insurance Co. v.
     The Black & Decker Corp., et al.
     <u>Civil Action No. 96-10804-DPW</u>

Dear Mr. Lepore:

  I enclose a copy of a recent invoice for defense costs incurred by Black & Decker with respect to the Alwell Long-Term Exposure Claim.  The invoice is labeled SUPP-2 1749-1750.

      Very truly yours,

      *Richard L. Binder*

      Richard L. Binder

RLB:hs
Enclosure

1/5/03

5-7586-4

# WILLCOX, PIROZZOLO AND McCARTHY

PROFESSIONAL CORPORATION

FIFTY FEDERAL STREET

BOSTON, MASSACHUSETTS 02110

HAROLD M. WILLCOX (1925-1975)
RICHARD P. CROWLEY (1927-2001)

JACK R. PIROZZOLO
RICHARD F. McCARTHY
RICHARD L. BINDER
RICHARD E. BENNETT
JUDITH S. ZISS
DAVID M. MAGEE
  (REGISTERED PATENT
  ATTORNEY)
JASON A. PIROZZOLO

OF COUNSEL
GERRY A. BLODGETT
  (REGISTERED PATENT
  ATTORNEY)

TELEPHONE (617) 482-5470

TELECOPIER (617) 423-1572

JACK R. PIROZZOLO
DIRECT DIAL: 617-482-5590
JPIROZZOLO@WPMLAW.COM

March 25, 2004

Ralph T. Lepore, III, Esquire
Holland & Knight
10 St. James Street
Boston, Massachusetts  02116

Re:  Liberty Mutual Insurance Co. v.
The Black & Decker Corp., et al.
<u>Civil Action No. 96-10804-DPW</u>

Dear Mr. Lepore:

I enclose copies of additional invoices for defense costs incurred by Black & Decker with respect to the Maritime Asbestos and Alwell Long-Term Exposure Claims. The Maritime Asbestos invoices are labeled SUPP-2 1751-1757, and the Alwell invoices are labeled SUPP-2 1758-1762.

Very truly yours,

Jack R. Pirozzolo

JRP:hs
Enclosures

3-31-04