```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS

LIBERTY MUTUAL INSURANCE CO., )
                              )
     Plaintiff,               )
                              )
     v.                       )
                              )
THE BLACK & DECKER CORP.,     ) CIVIL ACTION NOS.:
BLACK & DECKER, INC.,         ) 04-10648-DPW (Abarca Bostik),
BLACK & DECKER, U.S. INC.,    ) 04-10649-DPW (Alwell Asbestos),
EMHART CORP., and EMHART      ) 04-10668-DPW (Mar. Asbestos),
INDUSTRIES, INC.,             ) 04-10669-DPW (Mar. Hearing Loss),
                              ) 04-10676-DPW (Pa. Benzene)
     Defendants.              )
```

MEMORANDUM AND ORDER
REGARDING PRE-JUDGMENT INTEREST
August 25, 2004

This Memorandum addresses what appears to be the only significant disputed issue between the parties in these several cases: the availability of prejudgment interest for the Abarca Bostik, Alwell Asbestos, Maritime Asbestos, Maritime Hearing Loss, and Pennsylvania Benzene long-term exposure claims. By early 1998 Liberty Mutual had agreed to defend the claims. However, due to various disputes and delays related to submission of invoices, Liberty Mutual did not actually reimburse any defense costs for four more years. In February 2002 it paid the outstanding defense costs incurred up to then -- some $1.79 million -- and has continued to pay all costs submitted since.[1]

---

[1] Black & Decker contends that Liberty Mutual's February 2002 payment was actually short by $5,919.97. I do not address this relatively minor factual dispute in this Memorandum but instead assume, for purposes of providing guidance regarding the

However, Black & Decker now seeks $1.11 million in prejudgment interest, calculated according to the Massachusetts statutory rate of twelve percent and running from the date of Black & Decker's payment of the various invoices until February 2002. Liberty Mutual refuses to pay prejudgment interest, arguing that: (1) Black & Decker is not entitled to prejudgment interest under the terms of the applicable Massachusetts statute because there has been no "verdict, finding or order for judgment for pecuniary damages"; (2) Black & Decker waived any claim to prejudgment interest by excessive delay in submitting invoices to Liberty Mutual; and (3) Black & Decker waived any claim to prejudgment interest by deliberately withholding the invoices from Liberty Mutual.

### BACKGROUND

By February 1996 Black & Decker had apparently given notice to Liberty Mutual of four long-term exposure ("LTE") claims: Abarca Bostik, Maritime Asbestos, Maritime Hearing Loss, and Pennsylvania Benzene.  During the next two months, Liberty Mutual investigated the claims but did not inform Black & Decker whether or not it would defend them.

In April 1996 Liberty Mutual filed an omnibus declaratory

---

availability of prejudgment interest, that in February 2002 Liberty Mutual fully paid the invoiced defense costs and has continued to pay these costs in a timely manner.

judgment complaint, styled Civil Action No. 96-10804,[2] concerning many of its insurance coverage disputes with Black & Decker. Black & Decker counterclaimed shortly thereafter, alleging that Liberty Mutual had failed to defend, <u>inter alia</u>, these four claims.  At some point between April and September 1996 -- the parties dispute exactly when -- Liberty Mutual agreed to defend these LTE claims.  In December 1996 Black & Decker notified Liberty Mutual of a fifth LTE claim, the Alwell Asbestos claim, and in August 1997 Black & Decker amended its counterclaim to include that claim.  Liberty Mutual agreed to defend the Alwell Asbestos claim no later than March 1998.

    Black & Decker did not at that point submit a complete set of invoices regarding the five LTE claims.  Rather, it began to submit them piecemeal starting in or after January 1998.  Some pre-1998 invoices, though apparently not all, were submitted in February 1998 with Black & Decker's summary judgment motion.  The invoices dated back to May 1994.

    At the May 18, 1998 hearing it emerged that Black & Decker had not submitted any bills on the Alwell Asbestos or Maritime Hearing Loss claims.  Counsel for Black & Decker explained that "no bills ha[d] been submitted since this case began . . . . [b]ecause it's been the subject of litigation here."  After

---

[2]On April 19, 2004 I ordered Liberty Mutual to file separate complaints for each claim or site.  The procedural history and relevant submissions in No. 96-10804 are fully incorporated into each of the claims at issue in this Memorandum.

further discussions between the parties, on May 25, 1999 Black & Decker submitted an initial set of invoices for these claims. Further invoices have been submitted at various points since then.

On January 30, 2002 Black & Decker, which had still not received any defense cost reimbursement, moved to supplement its counterclaim to add allegations concerning Liberty Mutual's failure to pay those costs. On February 12, 2002 Liberty Mutual paid the amounts listed on the invoices.

## **ANALYSIS**

Black & Decker portrays this as a simple case of breach of contract followed by a partial satisfaction, for which prejudgment interest applies as of course under Massachusetts law. I find the issues to be a good deal more complex. First, I note that Massachusetts law probably does not govern several of the claims here, although this may not make a difference in the analytical and equitable approach I employ. See infra note 7. Second, even where Massachusetts law directly governs, the prejudgment interest statute does not apply by its own terms because there has been no verdict or judgment in Black & Decker's favor. Third, even if the Massachusetts prejudgment interest statute applied, it would not apply in the manner that Black & Decker suggests. That said, however, Black & Decker does have a means by which to seek compensation for the loss that a

prejudgment interest statute addresses: the time value of money for the period during which it was deprived of funds due to Liberty Mutual's breach of its duty to pay defense costs. I outline that means in this Memorandum.

**I.**

In a diversity case, prejudgment interest is considered substantive law and is therefore governed by state law. <u>Commercial Union Ins. Co. v. Walbrook Ins. Co.</u>, 41 F.3d 764, 775 (1st Cir. 1994). The parties appear simply to assume that Massachusetts law applies, but the question requires some analysis.

To calculate prejudgment interest, a federal court "must apply the law of the state in which the court sits, <u>including that state's conflict-of-law principles.</u>" <u>Id.</u> at 775 (emphasis added). Under Massachusetts conflict-of-law principles, prejudgment interest is calculated according to the law of the state that provides the substantive law governing the underlying transaction. See <u>Morris v. Watsco, Inc.</u>, 385 Mass. 672, 676-77 (1982).

Numerous factors are brought to bear in ascertaining which state's laws should govern the construction of a particular set of insurance policies issued to a particular entity. See generally <u>Millipore Corp. v. Travelers Indem. Co.</u>, 115 F.3d 21, 29 (1st Cir. 1997); <u>United Techs. Corp. v. Liberty Mut. Ins. Co.</u>,

407 Mass. 591, 597 (1990); Bushkin Assocs., Inc. v. Raytheon Co., 393 Mass. 622, 630-31 (1985).  That said, as a practical matter, an action for breach of an insurance contract (or for declaratory judgment that no breach occurred) is typically governed by the law of the state where the insured was based.  In this litigation, I have already held that USM and PCI policies are governed by Massachusetts law, Farrel and MITE policies by Connecticut law, and Black & Decker policies by Maryland law.

These five LTE actions appear to involve USM, Farrel, and Black & Decker policies.  The Abarca Bostik and Pennsylvania Benzene cases involve USM policies; the Alwell Asbestos claim involves both USM and Farrel policies; and the Maritime Asbestos and Maritime Hearing Loss claims involve Black & Decker policies.  Thus, Connecticut and Maryland prejudgment interest law would, absent agreement otherwise, ordinarily apply to at least part of the claims at issue in these cases.

The parties have briefed this issue on the assumption that Massachusetts law applies to all five claims.[3]  Under the law of

---

[3]This implicit agreement may be a legally sufficient basis to apply Massachusetts law even if it otherwise might not apply. See Mathewson Corp. v. Allied Mar. Indus., Inc., 827 F.2d 850, 853 n.3 (1st Cir. 1987) (in challenge to enforceability of compromise agreement settling in-progress federal court litigation, where parties agreed that enforceability of agreement should be determined under Massachusetts law but Court of Appeals had serious doubts because of strong federal interest, court nevertheless applied Massachusetts law, in part because "given the expressed preference of the parties, [court was] at liberty to accept their 'implicit concession' that Massachusetts law controls"); see also One Nat'l Bank v. Antonellis, 80 F.3d 606,

the case, that unexamined assumption is unfounded.  The prejudgment interest law of Connecticut and of Maryland differs materially from the terms of Mass. Gen. Laws ch. 231, § 6C.[4]

---

608 (1st Cir. 1996) (applying Massachusetts law on the sole basis that parties agreed to it, declining further analysis); Moores v. Greenberg, 834 F.2d 1105, 1107 n.2 (1st Cir. 1987) ("Where the parties agree what substantive law controls in a diversity case, we can -- and ordinarily should -- accept such a concession.").

[4] Although I do not have the benefit of the parties' briefing on this topic and consequently it would be premature to make final conclusions regarding Connecticut or Maryland prejudgment interest law, I briefly limn their respective boundaries as I understand them.

In Connecticut, "interest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions . . . as damages for the detention of money after it becomes payable."  Conn. Gen. Stat. § 37-3a.  Whether to award prejudgment interest "is a question for the trier of fact" if the trier determines that "equitable considerations deem that [interest] is warranted."  Ceci Bros., Inc. v. Five Twenty-One Corp., 840 A.2d 578, 585 (Conn. App. Ct. 2004), cert. denied, 846 A.2d 881 (Conn. 2004).  For example, prejudgment interest can be denied on the grounds that the defendant "had a good faith belief that the agreement was unenforceable."  Hoye v. DeWolfe Co., 764 A.2d 1269, 1272 (Conn. App. Ct. 2001).

In Maryland, the prejudgment interest rate is fixed at six percent by the state constitution.  Md. Const. art. 3, § 57; Stroh v. Omni Arabians, Inc., 748 A.2d 1015, 1020 (Md. Ct. Spec. App. 2000).  However, the availability of prejudgment interest "generally is left to the discretion of the fact finder."  Ver Brycke v. Ver Brycke, 843 A.2d 758, 777 (Md. 2004) (internal quotation marks and citation omitted).  There is a limited exception under which prejudgment interest is available as of right "when the obligation to pay and the amount due had become certain, definite, and liquidated by a specific date prior to judgment so that the effect of the debtor's withholding payment was to deprive the creditor of the use of a fixed amount as of a known date."  Id. at 777-78 (internal quotation marks and citation omitted).  However, this exception is construed narrowly:  "[E]ven when the amount is certain, a legitimate dispute as to the obligation to pay deprives the claimant of an absolute right to interest . . . ."  Gordon v. Posner, 790 A.2d 675, 698 (Md. Ct. Spec. App. 2002), cert. denied, 798 A.2d 552 (Md. 2002).

-7-

**II.**

Where Massachusetts law governs, the prejudgment interest statute for contract actions provides that:

> In all actions based on contractual obligations, upon a verdict, finding or order for judgment for pecuniary damages, interest shall be added by the clerk of the court to the amount of damages . . . at the rate of twelve per cent per annum, from the date of the breach or demand.  If the date of the breach or demand is not established, interest shall be added by the clerk of court . . . at the rate of twelve per cent per annum from the date of the commencement of the action . . . .

Mass. Gen. Laws ch. 231, § 6C.  Based on these principles, Black & Decker contends that it is entitled to twelve percent interest on each legal bill, running from the date that Black & Decker originally paid that bill until February 12, 2002.

However, the particulars of this case do not meet the requirements of § 6C.  The right to prejudgment interest attaches only "upon a verdict, finding or order for judgment for pecuniary damages."  Mass. Gen. Laws ch. 231, § 6C.  There has been no such verdict, finding, or order for judgment with respect to these claims, and presumably there never will be, for the simple reason that Liberty Mutual paid the amounts required before any verdict or judgment could issue.  I do not foresee how I or a jury could issue a verdict, finding, or order for judgment for pecuniary damages arising from a breach of the duty to defend in these cases, since I assume, <u>but see</u> <u>supra</u> note 1, that Liberty Mutual <u>fulfilled</u> that obligation.  Nor could the fact that Black &

Decker has requested interest itself constitute a prayer for the finding upon which to ground prejudgment interest under § 6C. Such a theory "puts the cart before the horse.  One must secure a judgment or finding for pecuniary damages arising out of a breach before an entitlement to prejudgment interest can attach." Protective Life Ins. Co. v. Dignity Viatical Settlement Partners, L.P., 171 F.3d 52, 55 (1st Cir. 1999).

    Black & Decker has no contractual right to interest, and so its only basis for interest per se is § 6C, which requires a verdict or finding that Liberty Mutual owes it damages for breach, other than (potentially) the interest itself.  At this point, however, Liberty Mutual does not owe damages for breach, other than the interest itself, and consequently I do not anticipate any verdict or finding will ever issue.  Thus, § 6C does not yet apply, and I therefore conclude that Black & Decker is not entitled to prejudgment interest under Massachusetts statutory law on any defense costs that Liberty Mutual has paid before any verdict, finding, or judgment for pecuniary damages.

## III.

Even if § 6C were in fact applicable, it would not apply as simply as Black & Decker suggests.  Courts applying § 6C have taken a common-sense approach towards the availability of prejudgment interest to avoid creating a windfall for either party.  The particulars of this case defy a simple application of § 6C and the uncomplicated resolution that would result:

> At first glance, application of the rule would appear straightforward and even mechanical. . . . [But] although the statute "commands a ministerial act, its sole or primary purpose was not to provide administrative ease" . . . [and] "[w]e should not accept the literal meaning of the words of a statute without regard for that statute's purpose and history."

Interstate Brands Corp. v. Lily Transp. Corp., 256 F. Supp. 2d 58, 62 (D. Mass. 2003) (Gertner, J.) (quoting Sterilite Corp. v. Cont'l Cas. Co., 397 Mass. 837, 839-40 (1986)).  Two principles developed in earlier cases are instructive.

First, while I note that these are not the facts here, where the loss was reimbursed <u>before</u> the action was <u>filed</u>, courts may either award interest based on the actual time value of money, or decline to award interest at all.  Boston Children's Heart Found. v. Nadal-Ginard, 73 F.3d 429, 440-42 (1st Cir. 1996) (where defendant reimbursed loss shortly before the litigation was filed, awarding statutory twelve percent interest would have resulted in a windfall to the plaintiff, and therefore awarding interest at the United States Treasury bill rates was proper);

Henley-Lundgren Co. v. Commonwealth, 27 Mass. App. Ct. 1195, 1196 (1989) (prejudgment interest not available at all where "the claim for the extra work was paid long before commencement of the action" because "there was no verdict, finding, or order for judgment on the claim for extra work on which interest could be computed").

Second, "a trial court has some discretion under Massachusetts practice to adjust an interest award if a prevailing litigant has been responsible for unnecessary delays." Foley v. City of Lowell, 948 F.2d 10, 17-18 (1st Cir. 1991); Currier v. Malden Redevelopment Auth., 16 Mass. App. Ct. 906, 908 (1983) (affirming trial court's adjustment of interest to run from well after complaint was filed because inartfully pled complaint and plaintiff's litigation strategy led to unnecessary delays), rev. denied, 389 Mass. 1105 (1983); Zappella v. Marlborough Coop. Bank, No. 98-1328, 16 Mass. L. Rptr. 359, 2003 WL 21500559, *4 (Mass. Super. Ct. June 11, 2003) (where bank caused error that led to inadequate mortgage payments, and mortgagee sought an accounting but bank refused, bank was not entitled to prejudgment interest at statutory rate but rather only at rates required by mortgage note).

The facts of these cases involve some degree of delay on both sides.  Black & Decker delayed its presentation of invoices and Liberty Mutual delayed its payment of invoices once presented.  Nevertheless, it is clear on the facts now before me

-11-

that, even if § 6C did apply, I would have some discretion to shape both the underlying pecuniary damages and any prejudgment interest award so as to provide full compensation to Black & Decker without giving it a windfall. In this respect it is appropriate to discuss <u>when</u> Black & Decker became entitled to defense cost reimbursement.

In actions for breach of the duty to defend, prejudgment interest under § 6C ordinarily runs from the dates of payment of the various invoices:

> The dates of the payment of the various bills, which are readily ascertainable, determine the points at which [the insured] was obliged to commit sums which it rightfully should not have been obliged to commit. . . . Therefore, prejudgment interest . . . should be calculated in this case on the basis of the various dates on which the legal bills were paid by [the insured].

<u>Sterilite</u>, 397 Mass. at 842; <u>Interstate Brands</u>, 256 F. Supp. 2d at 64; <u>Santos v. Chrysler Corp.</u>, 430 Mass. 198, 218 (1999). But mechanical application of the <u>Sterilite</u> holding would not lead to a just result in this case because it would overcompensate Black & Decker. <u>Sterilite</u>'s holding that prejudgment interest runs from the date of payment must be understood in the context of that case's facts and its broader analysis.

The underlying plaintiff in that case filed suit against Sterilite in July 1975. <u>Sterilite Corp. v. Cont'l Cas. Co.</u>, 17 Mass. App. Ct. 316, 317 (1983), <u>rev. denied</u>, 391 Mass. 1102 (1984). Sterilite notified Continental (its insurer) almost immediately, and Continental provisionally assumed the defense on

Sterilite's behalf. In August 1975, however, Continental disclaimed responsibility for certain of the alleged claims, and in January 1976 disclaimed _all_ responsibility. Id. Sterilite then defended itself in the underlying action at its own expense. In 1980 it brought a declaratory judgment action against Continental, and the court found that Continental had breached the duty to defend. Id. at 317-18. That decision was affirmed in 1983 with modifications not relevant here, see generally id., and thereafter Continental assumed further defense and offered to reimburse Sterilite for past expenses, including some prejudgment interest, see 397 Mass. at 838.

The secondary dispute centered on the appropriate start date for prejudgment interest. Continental argued that interest should run from October 1980, when the declaratory judgment action was filed; Sterilite argued it should run from January 1976, when Continental declined the defense. 397 Mass. at 838. It was in this context that the SJC held that interest runs from the dates of payment of the various invoices:

> While [Continental] was in breach of its duty to defend Sterilite on January 5, 1976, there was no duty at that time to reimburse Sterilite for legal expenses incurred at later dates. This duty arose when Sterilite, on notice that [Continental] would refuse to pay for those expenses, was forced to pay those expenses itself. The dates of the payment of the various bills, which are readily ascertainable, determine the points at which Sterilite was obliged to commit sums which it rightfully should not have been obliged to commit. Before those bills were paid, Sterilite was not deprived of the use of its money. No interest is due on sums when Sterilite was not deprived of the use of those sums. Any other rule would result in a windfall for Sterilite, which the Legislature did not intend.

> Therefore, prejudgment interest under G.L. c. 231, § 6C, should be calculated in this case on the basis of the various dates on which the legal bills were paid by Sterilite.

Id. at 841-42. Crucially, the duty "to reimburse Sterilite for legal expenses incurred at later dates . . . arose when Sterilite, <u>on notice that [Continental] would refuse to pay for those expenses</u>, was forced to pay those expenses itself." Id. at 841 (emphasis added).

In short, it does not follow from <u>Sterilite</u> that every insured whose insurer breaches the duty to defend is always entitled to prejudgment interest from the dates of payment of the various bills. The primary purpose of prejudgment interest is "to compensate a damaged party for the loss of use or unlawful detention of money." <u>Perkins Sch. for Blind v. Rate Setting Comm'n</u>, 383 Mass. 825, 835 (1981). It is not to provide the insured with compensation greater than it would have received had the insurer promptly assumed the defense.

It is perhaps obvious, but merits explicit statement, that in the ordinary course of business where an insurer has assumed a defense, interest is generally not paid on legal bills. When the insured submits a bill for reimbursement, there can be a commercially reasonable net credit period, typically 30 or 60 days. Under a "net 60 days" payment schedule, which counsel for Black & Decker has conceded is not unreasonable, the balance is due after 60 days. While discounts may be available for faster payment, interest is ordinarily not assessed during that 60 day

-14-

period.  In the insurance defense context, the insured's counsel may bill the insurer directly, or, at the minimum, the insured will immediately forward newly-received invoices to the insurer. Consequently, the insured incurs no loss, and the insurer pays counsel within the commercially reasonable net 60 day period.

The rule of Sterilite is thus completely compatible with the ordinary commercial reality.  Where the insurer declines the defense after notice, the insured (not the insurer) must pay counsel on, for example, a net 60 day basis, and therefore the insured is entitled to interest from the date of actual payment. Along a parallel analysis, under ordinary commercial conditions, if an insured notifies the insurer of a claim after the insured has already spent money on defense, and the insurer accepts the defense, the insurer is justified in taking a commercially reasonable period of time, presumptively 60 days, to review the invoices.  Assuming that it makes payment within that period, there is no reason for court-imposed interest to be added.

In short, had Liberty Mutual assumed the defense upon notice by Black & Decker, it would not have paid interest running from the dates that pre-notice invoices were paid.  Therefore, even if § 6C applied, it would not make sense to apply the precise Sterilite holding, which was formulated in the context where an insurer refused to defend the insured before the invoices at issue were paid.  Rather, for expenses incurred before notice, a § 6C prejudgment interest award would have to reflect the fact that the insurer requires a reasonable period of time to review

the invoices.  By contrast, expenses incurred <u>after</u> Liberty Mutual received notice of the claim should have been reimbursed immediately, and, if § 6C applied, Black & Decker would be entitled to prejudgment interest from the date of payment, under the <u>Sterilite</u> protocol.[5]

### IV.

Simply because Black & Decker has no formal claim under § 6C does not mean that it may not be compensated for the lost time value of the money it spent.  While Liberty Mutual eventually reimbursed the defense costs, it did not <u>timely</u> fulfill that obligation for all of the bills submitted.  That in itself constitutes a breach.  The SJC has carefully distinguished "the breach of the insurer's duty to pay the insured's bills [from] the preceding breach of the duty to defend."  <u>Commonwealth v. Johnson Insulation</u>, 425 Mass. 650, 667 (1997).  The duty to pay the bills can be breached by late payment even if the insurer timely accepted the duty to defend.  Furthermore, that breach distinguishes this case from <u>Protective Life</u>, where the insurer made prompt (if unintentional) payment but then litigated the matter:

> Of course, had [the insurer] refused to pay [the insured's] claim pending resolution of the declaratory judgment action, it would have done so in breach of the

---

[5] For these post-notice expenses it is irrelevant, at least for purposes of Massachusetts law, whether Black & Decker or Liberty Mutual was primarily responsible for the delay.  What is relevant is that Liberty Mutual had use of the money while Black & Decker did not.

>     life insurance policy (as matters turned out) -- but
>     the exact opposite occurred.  When [the insured]
>     submitted its claim . . ., [the insurer] promptly
>     honored it.  That it continued to press an action for a
>     judicial declaration of its rights and for restitution
>     did not place it in breach.

171 F.3d at 55; see also Pac. Ins. Co. v. Eaton Vance Mgmt., 260 F. Supp. 2d 334, 346 (D. Mass. 2003) (Tauro, J.) ("Because the goal of prejudgment interest is to compensate the prevailing party for the loss of use of money that rightfully belonged to it, there is no reason [the insurer] should be able to avoid prejudgment interest merely by paying the disputed amount before the court issues a judgment as to damages."), rev'd in part & vacated in part on other grounds, 369 F.3d 584 (1st Cir. 2004).

For the breach of the duty to timely pay the insured's bills, Black & Decker has a claim for pecuniary damages equal to the lost time value of money at reasonable market rates.  This component of pecuniary damages is interest calculated at a reasonable market rate for the period between the date that Black & Decker incurred a loss due to Liberty Mutual's breach -- for pre-notice expenses, a commercially reasonable period (presumptively 60 days) after the date of payment of the invoice; for post-notice expenses, the date of payment of the invoice -- and the date that Liberty Mutual reimbursed Black & Decker for that invoice.[6]  An appropriate market rate would be the weekly

---

[6] For this purpose, I ascribe little significance to the fact that Black & Decker did not promptly submit bills, or perhaps even deliberately withheld them.  Liberty Mutual argues that Liberty Mutual could not have paid, and therefore had done

average one-year constant maturity United States Treasury yield. Cf. 28 U.S.C. § 1961 (establishing this as federal rate for postjudgment interest); Nadal-Ginard, 73 F.3d at 440-42 (approving this rate for prejudgment interest where obligation was paid long before any judgment entered); but see McCarthy v. Ground Round, Inc., No. 94-2805, 1998 WL 726604, *4 (Mass. Super. Ct. Oct. 15, 1998) (noting First Circuit's Nadal-Ginard decision but doubting that it "accurately reflects either Massachusetts law or practice").

It bears emphasis that any recovery of damages for the lost time value of money, even if it results in a verdict, finding, or order for judgment for pecuniary damages, would not itself be subject to statutory prejudgment interest. Where the damages award to the prevailing party has itself included compensation for the lost time value of money, prejudgment interest is considered duplicative and thus inappropriate. See Interstate Brands, 256 F. Supp. 2d at 62 (declining to award prejudgment interest because jury had been specifically instructed to award present value of prevailing party's lost profits); Computer Sys.

---

nothing wrong, until it received the invoices.  That is true, but does not lead to Liberty Mutual's conclusion that the interest should run from the date that Black & Decker actually submitted the invoice for reimbursement, or some point thereafter.  The fact that Black & Decker may recover the lost time value of money at then-prevailing market rates neither implies nor arises from any suggestion that Liberty Mutual was at fault in not paying the invoices earlier.  What is material is that Liberty Mutual constructively had the use of the money at issue during that time period, and Black & Decker did not.

Eng'g, Inc. v. Qantel Corp., 571 F. Supp. 1379, 1383 (D. Mass. 1983) (Keeton, J.) (same, and explaining that "interest is, by nature, an allowance for the time value of money, and awarding both interest and any other form of allowance for the time value of money is inherently duplicative"); Dan B. Dobbs, 1 Law of Remedies § 3.6(5), at 360 (2d ed. 1993) (same).

## CONCLUSION

Apart from those reasonable defense costs which may be paid as a result of verdict, finding, or order for judgment in this case, see, e.g., supra note 1, Black & Decker will not be entitled to prejudgment interest pursuant to the terms of Mass. Gen. Laws ch. 231, § 6C.  Black & Decker will, however, be entitled to time value compensation as damages calculated using the federal prejudgment interest rate, 28 U.S.C. § 1961, applied to the invoice amounts paid by Black & Decker, beginning (a) with respect to expenses incurred before notice to Liberty

Mutual, as of 60 days after the date of payment; and (b) with respect to expenses incurred _after_ notice to Liberty Mutual, as of the date of payment.[7]

```
                              /s/ Douglas P. Woodlock
                              _____
                              DOUGLAS P. WOODLOCK
                              UNITED STATES DISTRICT JUDGE
```

---

[7] I note that both the Connecticut and Maryland regimes for assessment of prejudgment interest involve discretion on the part of the factfinder according to equitable principles. See supra note 4. While I have not had the benefit of briefing by the parties on the issue, to the degree that Connecticut or Maryland law applies, I am not presently aware of any factors which would cause me to exercise my discretion differently than in the manner I have outlined in the body of this Memorandum under Massachusetts law.